In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3648

TIMOTHY OZINGA, *et al.*,

*Plaintiffs-Appellants*,

*v.*

THOMAS E. PRICE, Secretary of Health
and Human Services, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-03292 — **Thomas M. Durkin**, *Judge.*

ARGUED NOVEMBER 1, 2016 — DECIDED APRIL 28, 2017

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* Ozinga Brothers, Inc. ("Ozinga
Brothers") is a family-owned firm supplying ready-mix
concrete products and services to builders primarily in the
Chicago metropolitan area. The company, along with its
owners and senior managers (collectively, "Ozinga") filed this

suit in 2013, challenging the so-called contraception mandate emanating from the Patient Protection and Affordable Care Act of 2010 (the "Affordable Care Act"), 124 Stat. 119 (Mar. 23, 2010). The mandate is embodied in federal regulations implementing a requirement of the Affordable Care Act that non-exempt and non-grandfathered group health plans provide specified preventative-health services to plan participants without cost-sharing; among those services are contraceptives approved by the Food and Drug Administration. *See* 42 U.S.C. § 300gg-13(a)(4); 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv); 26 C.F.R. § 54.9815-2713(a)(1)(iv); http://hrsa.gov/womensguidelines2016/index.html (women's preventative service guidelines) (visited April 26, 2017). Employers who refuse to provide such services are subject to substantial fines. *See* 26 U.S.C. § 4980H. Ozinga regards certain of the contraceptives covered by the mandate as potential abortifacients, the use of which is proscribed by the firm owners' and managers' religious tenets. Invoking the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq.*, among other statutory and constitutional provisions, Ozinga sought declaratory and injunctive relief barring the enforcement of the mandate.

By the time Ozinga filed suit in 2013, the government had established an accommodation for certain religious employers that provided for alternate means of ensuring employee access to the contraceptive services specified by the mandate without payment or direct involvement by an objecting employer. 76 Fed. Reg. 46,621, at 46,623 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012); *see also* 78 Fed. Reg. 39,870, at 39,873–882 (July 2, 2013) (simplifying and clarifying criteria identifying employers

eligible for exemption); 45 C.F.R. §147.131(a) & b(2)(i). How-ever, the accommodation was not then available to any for-profit employers like Ozinga Brothers. Ozinga's complaint highlighted the discrepancy. *See* R. 1 ¶¶ 105–08, 112–16, 170–76, 206, 227–28, 245. At the same time, the complaint made no allegation suggesting that an extension of the accommoda-tion to for-profit firms would be insufficient to resolve Ozinga's religious objections to the mandate.

Ozinga's suit was part of an initial wave of lawsuits challenging the application of the contraception mandate to for-profit firms. In the first such cases to reach this court, we held that the objecting closely-held firms were entitled to preliminary injunctions barring enforcement of the mandate. We concluded that the firms were likely to prevail on their claims under the RFRA that the mandate substantially bur-dened the religious rights of both the firms and their owners, *see* § 2000bb-1(a), and that the government was unlikely to show that it had employed the least restrictive means of furthering its asserted interest in increasing access to contra-ceptives, *see* § 2000bb-1(b). *Korte v. Sebelius*, 528 F. App'x 583 (7th Cir. 2012) (non-precedential decision) ("*Korte I*") (granting interim relief pending appeal); *Grote v. Sebelius*, 708 F.3d 850 (7th Cir. 2013) (same); *Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) ("*Korte II*") (holding plaintiff companies were entitled to preliminary injunctive relief).

Without opposition from the government, and in light of our decisions in *Korte I* and *Grote*, the district court granted Ozinga's motion for a preliminary injunction barring enforce-ment of the mandate against Ozinga Brothers; it also stayed

further proceedings pending our resolution of the merits of the *Korte* and *Grote* appeals.

This first wave of litigation culminated in the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). *Hobby Lobby* concluded that the contraception mandate, as applied to closely-held private firms whose owners objected on religious grounds to one or more types of contraceptives covered by the mandate, substantially burdened the exercise of religion by those owners—and by extension, their companies—in view of the fines to which the firms were subject if they did not comply with the mandate. *Id.* at 2768–79. The Court reasoned that the mandate was not the least restrictive means of furthering the government's interest in making contraceptives widely available, given that the government could (among other alternatives), extend the existing accommodation for religiously-affiliated, not-for-profit employers to closely-held for-profit employers. *Id.* at 2782–83. The Court left open the question whether that accommodation in its particulars "complies with RFRA for purposes of all religious claims." *Id.* at 2782; *see also id.* at 2763 n.9.

In the wake of the *Hobby Lobby* decision, the government in July 2015 extended the accommodation to closely held for-profit employers who object to the mandate on religious grounds. 80 Fed. Reg. 41,318, at 41,322–328 (July 14, 2015); *see* 45 C.F.R. § 147.131(b)(2)(ii).

In the meantime, a second wave of litigation challenging the contraception mandate had commenced in federal courts around the country. This round of litigation was instigated by various not-for-profit, religiously-affiliated employers to

whom the accommodation had been available from the start. These employers contested the adequacy of the accommodation, which imposes certain procedural requirements on an objecting employer, to protect their religious interests. This court rejected the challenges brought by these not-for-profit employers in multiple decisions. *See Univ. of Notre Dame v. Burwell*, 786 F.3d 606 (7th Cir. 2015), *cert. granted, j. vacated, & remanded*, 136 S. Ct. 2007 (2016); *Wheaton Coll. v. Burwell*, 791 F.3d 792 (7th Cir. 2015); *Grace Schools v. Burwell*, 801 F.3d 788 (7th Cir. 2015), *cert. granted, j. vacated, & remanded*, 136 S. Ct. 2010, 2011 (2016). Ultimately, when the Supreme Court took up this line of challenges in *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (per curiam), the Court declined to reach the merits of the issues presented. Instead, the Court remanded these cases to the lower courts in order to afford the parties an opportunity to see if the accommodation could be modified in such a way as to address the religious concerns of the objecting employers while continuing to meet the government's interest in making contraceptive services available to employees. The government solicited public comments on possible modifications, 81 Fed. Reg. 47,741 (July 22, 2016); the period for such comments has closed, and potential revisions to the accommodation are under advisement.[1]

---

[1]  Earlier this year, in the waning days of President Obama's administration, the government indicated that no further revisions to the regulatory accommodation would be made at that time. *See FAQs About Affordable Care Act Implementation Part 36*, at 4, 5 (January 9, 2017), https://www.cms.gov/CCIIO/Resources/Fact-Sheets-and-FAQs/Downloads/ACA-FAQs-Par36_1-9-17-Final.pdf (visited April 26, 2017). However, when President Trump

(continued...)

This second wave of litigation challenging the sufficiency of the accommodation was in full swing in September 2015 when the parties in this case came before the district court with competing proposals as to what form of permanent injunctive relief they viewed as appropriate in view of the Supreme Court's decision in *Hobby Lobby*. Notwithstanding the fact that the regulatory accommodation had by this time been expanded to include closely held for-profit employers, Ozinga believed

---

[1] (...continued)

assumed office, he immediately issued an executive order directing the Secretary of Health and Human Services and the heads of all other executive departments and agencies with authorities and responsibilities under the Patient Protection and Affordable Care Act to "exercise all authority and discretion available to them to waive, defer, grant exemptions from, or delay the implementation of any provision or requirement of the Act that would impose … a cost, fee, tax, penalty, or regulatory burden on … health insurers, … [or] purchasers of health insurance … ." Exec. Order No. 13,765 of Jan. 20, 2017, *Minimizing the Economic Burden of the Patient Protection and Affordable Care Act Pending Repeal* § 2, 82 Fed. Reg. 8351 (publ. Jan. 24, 2017). Post-*Zubik* status updates submitted to this court in cases challenging the sufficiency of the accommodation indicate that the parties have not yet ruled out the possibility of a mutually-agreeable settlement of those disputes. *See, e.g., Grace Schools, et al. v. Price, et al.*, Nos. 14-1430 & 14-1431, Doc. 132 at 2 (Status Report of Plaintiffs-Appellees) ("On February 13, 2017, counsel for Plaintiffs-Appellees submitted a letter to the Attorney General to reinitiate discussions concerning a resolution of these cases, as was contemplated by the Supreme Court's order in *Zubik*. Plaintiffs-Appellees are awaiting the Government's response."); Doc. 131 (Status Report of Appellants) ("The Departments respectfully request that they be permitted to file another status report in 60 days on May 15, 2017, to allow incoming leadership personnel adequate time to consider the issues."). We take it then, that further revision of the accommodation remains a possibility.

it was entitled to a broad injunction precluding enforcement of any regulation promulgated in furtherance of the mandate, including the newly-revised accommodation. The government, by contrast, asked the court to enter an injunction limited to the original version of the contraception mandate, which of course had made no accommodation available to for-profit employers. The court decided to adopt the government's proposal (R. 53) and entered a permanent injunction limited to the mandate as it existed prior to the Supreme Court's decision in *Hobby Lobby* (R. 54). But the injunction provided that "nothing herein prevents plaintiffs from filing a new civil action to challenge the accommodations or any other post-*Hobby Lobby* changes in statute or regulation." R. 54 at 2–3.

Ozinga contends on appeal that the district court abused its discretion and otherwise erred in entering the more limited injunction proposed by the government rather than the injunction that Ozinga itself proposed. Ozinga reasons that the injunction as entered provides no lasting relief to the plaintiffs because it is limited to a state of affairs pre-dating *Hobby Lobby*—one that no longer exists. Ozinga makes other objections to the injunction, but we need not reach the merits of these challenges. We agree with Ozinga that it was error for the court to enter an injunction directed to a version of the regulatory framework that has been superseded—although not on the grounds that Ozinga has advanced. In fact, for the reasons that follow, we conclude that it was error for the court to enter any injunctive relief at all once the regulatory accommodation was revised to include for-profit employers like Ozinga Brothers. At that point, the case was moot.

Ozinga's suit was focused exclusively on the mandate as it was originally adopted, with no accommodation addressed to closely held for-profit employers like Ozinga Brothers that object to the mandate on religious grounds. Ozinga's complaint was that the accommodation was limited to not-for-profit employers and that for-profit employers, like Ozinga Brothers, were categorically excluded from the accommodation. Nothing in the complaint presented any question as to the adequacy of the accommodation itself, nor at any time during the pendency of the suit did the plaintiffs seek to amend their complaint to challenge the particulars of the accommodation (beyond who could invoke it), notwithstanding the second wave of litigation by other employers presenting such challenges. *See* R. 53 at 3 (district court's order adopting government's proposed injunction) ("Whether the post-*Hobby Lobby* regulations are valid is beyond the scope of Plaintiffs' current complaint, and they have not sought to amend it.").

Our jurisdiction as a federal court is limited by Article III to live cases and controversies, U.S. CONST. art. III, § 2, and "an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Kingdomware Technologies, Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 133 S. Ct. 721, 726 (2013)); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). When a plaintiff's complaint is focused on a particular statute, regulation, or rule and seeks only prospective relief, the case becomes moot when the government repeals, revises, or replaces the challenged law and thereby removes the complained-of defect. *See, e.g., Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 474, 478, 110 S. Ct. 1249, 1252, 1254 (1990)

(amendments to statute); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103, 102 S. Ct. 867, 869 (1982) (per curiam) (amendment of regulations). At that point, there is no longer an ongoing controversy: the source of the plaintiff's prospective injury has been removed, and there is no "effectual relief whatever" that the court can order. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 449 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S. Ct. 132, 133 (1895)); *see, e.g., Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) (repeal of challenged statute) (collecting cases); *City of Milwaukee v. Block*, 823 F.2d 1158, 1163–64 (7th Cir. 1987) (repeal of regulations that plaintiff alleged defendants were ignoring). Only when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated will a court recognize that the controversy remains live. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11, 102 S. Ct. 1070, 1074–75 & n.11 (1982) (case not moot despite repeal of challenged statute where city had announced its intent to reenact the statute if district court's judgment were vacated). Otherwise, we presume that government officials have acted in good faith in repealing the challenged law or policy. *See, e.g., Fed'n of Adver. Indus. Representatives*, 326 F.3d at 929.

In this case, the revision of the regulatory framework in July 2015 rendered moot Ozinga's challenge to the contraception mandate. As we have said, that challenge was focused solely on the exclusion of for-profit companies from the regulatory accommodation for employers with religious objections to the mandate. Ozinga had enjoyed the benefit of preliminary injunctive relief during the litigation, so it had

suffered no injury as a result of the mandate; what it sought was prospective relief. Once the government, in response to the *Hobby Lobby* decision, re-wrote the regulations to permit closely held for-profit firms to invoke the accommodation (and there was no dispute that Ozinga Brothers had become eligible for and entitled to invoke the revised accommodation), the mandate no longer posed a prospective harm to the company, and there was no longer any action for the court to take on Ozinga's behalf. Any injunction directed to the prior regulations foreclosing the accommodation to Ozinga Brothers (which is the very sort of injunction that the district court entered here) necessarily would be meaningless, as those regulations no longer exist. *See N.E. Fla. Chapter of Assoc'd Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 670, 113 S. Ct. 2297, 2305 (1993) (O'Connor, J., dissenting) (collecting cases). True, regulations are transitory, *see Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 328 (7th Cir. 1991), and in light of the second-wave challenges to the sufficiency of the accommodation and *Zubik*'s directive to see if those challenges can be accommodated, further revisions to the regulatory framework may be in the offing. But we have no reason to think that any such revisions might result in the renewed exclusion of corporations like Ozinga Brothers from the accommodation, given the Supreme Court's holding in *Hobby Lobby* that such corporations otherwise have a valid First Amendment objection to the mandate. In short, "the issue of the validity of the old regulation[s] is moot, [and] this case has 'lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract questions of law.'" *Princeton Univ.*, 455 U.S. at 103, 102 S. Ct. at

869 (quoting *Hall v. Beals*, 396 U.S. 45, 48, 90 S. Ct. 200, 201–02 (1969) (per curiam)).

The parties' shared belief that there remains a live controversy[2]—because the plaintiffs have asked for a broad injunction permanently barring any enforcement of the mandate against Ozinga Brothers—mistakenly presumes that Ozinga has made a case that might plausibly support such relief. But as we have said, Ozinga's complaint focused on its exclusion from the accommodation made available to not-for-profit entities, and at no time in the litigation has Ozinga alleged that the accommodation itself is inadequate to address its religious concerns. Its briefing on the subject of mootness merely hints at the possibility that the accommodation may be insufficient (by referencing the *Zubik* line of challenges), without bothering to explain why the accommodation as presently constructed may pose a problem for Ozinga Brothers or its principals. If, indeed, Ozinga continues to face the threat of injury notwithstanding the fact that closely held for-profit firms may now invoke the accommodation, it has made no such showing in any form. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108–09, 118 S. Ct. 1003, 1019–20 (1998). It could have sought leave to amend its complaint to pursue such allegations and did not; it is free to file a new suit if it believes the existing accommodation is flawed in some way.

To be sure, the revised regulations do not alter Ozinga's status as a prevailing party in this case. The change occurred

---

[2]   Following oral argument, we asked the parties to submit supplemental briefs as to whether this case became moot after the accommodation was revised in July 2015.

after Ozinga sought and obtained preliminary injunctive relief and after *Hobby Lobby* validated the legal theory that Ozinga and other employers had pursued in this and similar suits. *See Cerajeski v. Zoeller*, 794 F.3d 828, 830–31 (7th Cir. 2015). Consequently, nothing prevents the district court from entering an appropriate award of fees to Ozinga pursuant to 42 U.S.C. § 1988(b).

We therefore VACATE the judgment and REMAND with directions to dismiss the case as moot. The district court retains the authority to entertain Ozinga's request for an award of costs and attorney's fees. The parties shall bear their own costs of appeal.