(Slip Opinion)	OCTOBER TERM, 2020	1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SALINAS *v.* UNITED STATES RAILROAD RETIREMENT BOARD

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 19–199.　Argued November 2, 2020—Decided February 3, 2021

In 1992, petitioner Manfredo M. Salinas began seeking disability benefits under the Railroad Retirement Act of 1974 (RRA) based on serious injuries he suffered during his 15-year career with the Union Pacific Railroad. Salinas' first three applications were denied, but he was granted benefits after he filed his fourth application in 2013. He timely sought reconsideration of the amount and start date of his benefits. After reconsideration was denied, he filed an administrative appeal, arguing that his third application, filed in 2006, should be reopened because the U. S. Railroad Retirement Board (Board) had not considered certain medical records. An intermediary of the Board denied the request to reopen because it was not made "[w]ithin four years" of the 2006 decision, and the Board affirmed. 20 CFR §261.2(b). Salinas sought review with the Fifth Circuit, but the court dismissed the petition for lack of jurisdiction, holding that federal courts cannot review the Board's refusal to reopen a prior benefits determination.

*Held*: The Board's refusal to reopen a prior benefits determination is subject to judicial review. Pp. 4–13.

　(a) The RRA makes judicial review available to the same extent that review is available under the Railroad Unemployment Insurance Act (RUIA). See 45 U. S. C. §231g. Thus, to qualify for judicial review, the Board's refusal to reopen Salinas' 2006 application must constitute "any final decision of the Board." §355(f). It does. Pp. 4–10.

　　(1) The phrase "any final decision" "denotes some kind of terminal event," and similar language in the Administrative Procedure Act has been interpreted to refer to an agency action that "both (1) mark[s] the consummation of the agency's decisionmaking process and (2) is one by which rights or obligations have been determined, or from which

legal consequences will flow." *Smith* v. *Berryhill*, 587 U. S. ___, ___, ___. The Board's refusal to reopen Salinas' 2006 denial of benefits satisfies these criteria. First, the decision was the "terminal event" in the Board's administrative review process. After appealing the intermediary's denial of reopening to the Board, Salinas' only recourse was to seek judicial review. Second, the features of a reopening decision make it one "by which rights or obligations have been determined, or from which legal consequences will flow." For example, a reopening is defined as "a conscious determination . . . to reconsider an otherwise final decision for purposes of revising that decision." 20 CFR §261.1(c). It therefore entails substantive changes that affect benefits and obligations under the RRA. The Board reads §355(f)'s earlier reference to "any other party aggrieved by a final decision under subsection (c)" to mean that each authorized party may seek review of only "a final decision under" §355(c). Section 355(f), however, uses the broad phrase "any final decision" without tying it to the earlier reference to §355(c)—a notable omission, since Congress used such limiting language elsewhere in §355, see §355(c)(5). Pp. 6–8.

(2) Any ambiguity in the meaning of "any final decision" must be resolved in Salinas' favor under the "strong presumption favoring judicial review of administrative action." *Mach Mining, LLC* v. *EEOC*, 575 U. S. 480, 486. The Board attempts to rebut that presumption by arguing that various cross-references within §355 prove that §355(f) and §355(c) are coextensive. There are several indications, however, that §355(f) is broader than §355(c). For example, under §355(g), determinations that certain unexpended funds may be used to pay benefits or refunds are subject to review exclusively under §355(f), yet the Board concedes that such decisions fall outside §355(c). Pp. 8–10.

(b) The Board's remaining arguments also fall short. First, the Board analogizes §355(f) to the judicial-review provision addressed in *Califano* v. *Sanders*, 430 U. S. 99. But the latter provision contains an express limitation that §355(f) does not, distinguishing *Califano* from this case. Second, the Board argues that reopening does not qualify for judicial review because it is simply a "refusal to make a new determination" of rights or liabilities, like the denial of reopening in *Your Home Visiting Nurse Services, Inc.* v. *Shalala*, 525 U. S. 449. The statute in *Your Home*, however, did not implicate the presumption in favor of judicial review and was narrower than §231g, which simply incorporates §355(f) into the RRA. Finally, the fact that the Board could decline to offer reopening does not mean that, having chosen to provide it, the Board may avoid the plain text of §355(f). The Board's decision to grant or deny reopening is ultimately discretionary, however, and therefore subject to reversal only for abuse of discretion. See 20 CFR §261.11. Pp. 10–13.

Syllabus

765 Fed. Appx. 79, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., BREYER, KAGAN, and KAVANAUGH, JJ., joined. THOMAS, J., filed a dissenting opinion, in which ALITO, GORSUCH, and BARRETT, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 19–199

————

## MANFREDO M. SALINAS, PETITIONER *v.* UNITED STATES RAILROAD RETIREMENT BOARD

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT*

[February 3, 2021]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Railroad Retirement Act of 1974 (RRA), 50 Stat. 307, as restated and amended, 45 U. S. C. §231 *et seq.*, establishes a system of disability, retirement, and survivor benefits for railroad employees. That system is administered by the U. S. Railroad Retirement Board (Board). The Board denied benefits to petitioner Manfredo M. Salinas, a former railroad employee, when he applied in 2006, but it later granted him benefits when he reapplied in 2013. Salinas then requested that the Board reopen its decision to deny his 2006 application, but the Board declined. This case asks whether the Board's refusal to reopen the prior denial of benefits is subject to judicial review. The Court holds that it is.

I

A

The RRA provides long-term benefits to railroad employees who have accrued enough years of service and who have either reached a certain age or become disabled. See 45 U. S. C. §§231a(a)(1), (b). It also provides benefits for eligi-

ble employees' spouses and survivors under certain conditions. §§231a(c)–(d). These benefits complement those provided by another statute, the Railroad Unemployment Insurance Act (RUIA), 52 Stat. 1094, 45 U. S. C. §351 *et seq.*, which covers short-term periods of unemployment and sickness. See §352. This case concerns benefits under the RRA only. Both statutes, however, are relevant, as discussed below.

To administer benefits under the RRA, the Board has implemented a multistep system of administrative review. First, an individual applies for benefits and receives an initial decision from the appropriate division of the Board, such as the Disability Benefits Division. 20 CFR §260.1(a) (2020). If the individual is dissatisfied, she may seek reconsideration from the Board's Reconsideration Section. §260.3(a). If denied again, she may appeal to the Board's Bureau of Hearings and Appeals (Bureau). §260.5(a). Lastly, the applicant may take a final appeal to the Board itself. §260.9(a).

This four-step sequence is the primary form of administrative review for benefits determinations. Applicants have a right to seek each of the above levels of review within 60 days. See, *e.g.,* 45 U. S. C. §231f(b)(3); 20 CFR §260.9(b). Once an applicant completes the review process, or the deadline for seeking further review passes, the benefits determination becomes "final" under the Board's regulations. See 20 CFR §261.1(b).

After a determination becomes final, an applicant can request that the Board reopen it. See §261.1(a). "Reopening . . . means a conscious determination on the part of the agency to reconsider an otherwise final decision for purposes of revising that decision." §261.1(c) (emphasis deleted). Whether to grant reopening is ultimately discretionary. See §261.11. The Board, however, has established substantive criteria to guide its discretion. For example, as relevant here, a decision may be reopened "[w]ithin four

years of the date of the notice of such decision, if there is new and material evidence." §261.2(b).

## B

Salinas is a former carpenter and assistant foreman for the Union Pacific Railroad. During his 15-year railroad career, he suffered two serious injuries on the job. In 1989, a co-worker dropped a sledge hammer from an overhead bridge, hitting Salinas on the top of his hardhat. Then, in 1993, a wooden railroad tie fell from a truck and struck Salinas in the head. As a result, Salinas underwent two spinal fusion surgeries. After receiving treatment, Salinas continued to experience pain, anxiety, and depression. He began seeking RRA disability benefits in 1992. His first two applications were denied, and he did not seek reconsideration of either.

On February 28, 2006, Salinas filed his third application for RRA benefits. The Board denied Salinas' application on August 28, 2006, concluding that his impairments were not severe enough to qualify for relief. After missing the deadline for seeking reconsideration, Salinas sent a letter to the Board requesting that it reconsider its decision "even though the 60 days had passed." Record 207. Salinas noted, among other things, that he had "more medical records to provide." *Ibid.* The Reconsideration Section denied Salinas' request, finding that he had failed to demonstrate good cause for his late filing. See 20 CFR §260.3(c). Salinas did not appeal.

Seven years later, on December 26, 2013, Salinas filed his fourth application for RRA benefits. This time, his application was granted. Although Salinas was deemed disabled as of October 9, 2010, his benefits began on December 1, 2012, 12 months prior to the date on which he filed his successful application. Under the RRA, disability benefits begin on the latest of several alternative start dates, and

Salinas' application-based start date was later than his disability onset date.  See Record 8; 45 U. S. C. §231d(a)(ii); 20 CFR §218.9(c).

Salinas timely sought reconsideration of the amount and start date of his benefits.  The Reconsideration Section denied relief, and Salinas appealed to the Bureau.  On appeal, Salinas argued that his 2006 application should be reopened because the Board had not considered certain medical records in existence at the time when it denied him benefits.  Salinas submitted the records as part of his appeal.

On August 26, 2016, the Bureau denied Salinas' request to reopen the 2006 decision.  The Bureau concluded that Salinas had failed to seek reopening based on "new and material evidence" within four years of the decision at issue, as required by regulation.  20 CFR §261.2(b).  Salinas appealed to the Board, which affirmed the Bureau's decision on the ground that Salinas had not met the criteria for reopening under §261.2.  The Board notified Salinas that he could seek judicial review of the Board's decision within one year.

Salinas filed a timely *pro se* petition for review with the United States Court of Appeals for the Fifth Circuit.  The Fifth Circuit dismissed the petition for lack of jurisdiction. 765 Fed. Appx. 79, 80–81 (2019) (*per curiam*).  In a previous decision, the Fifth Circuit had joined the majority of Circuits in holding that federal courts cannot review the Board's refusal to reopen a prior benefits determination. See *Roberts* v. *Railroad Retirement Bd.*, 346 F. 3d 139, 141 (2003).  The Fifth Circuit noted a longstanding split among the Circuits on this issue.  765 Fed. Appx., at 80–81 (citing cases).

We granted certiorari to resolve the conflict among the Courts of Appeals.  589 U. S. ___ (2020).

## II

Section 231g of the RRA provides that, except for the

deadline for seeking review, "[d]ecisions of the Board determining the rights or liabilities of any person" under the RRA "shall be subject to judicial review in the same manner, subject to the same limitations, and all provisions of law shall apply in the same manner as though the decision were a determination of corresponding rights or liabilities under the Railroad Unemployment Insurance Act." 45 U. S. C. §231g. In other words, §231g makes judicial review available under the RRA to the same extent that review is available under the RUIA.[1] This case, therefore, turns on the RUIA's judicial review provision, 45 U. S. C. §355(f).

Section 355(f) provides: "Any claimant, or any railway labor organization organized in accordance with the provisions of the Railway Labor Act . . . , of which claimant is a member, or any base-year employer of the claimant, or any other party aggrieved by a final decision under subsection (c) of this section, may . . . obtain a review of any final decision of the Board."[2] To qualify for judicial review under this provision, the Board's refusal to reopen its denial of Salinas'

———————

[1] Every Court of Appeals to interpret these statutes has reached the same conclusion. See *Stovic* v. *Railroad Retirement Bd.*, 826 F. 3d 500, 502 (CADC 2016) (Kavanaugh, J., for the court); *Cunningham* v. *Railroad Retirement Bd.*, 392 F. 3d 567, 571 (CA3 2004); *Roberts* v. *Railroad Retirement Bd.*, 346 F. 3d 139, 140 (CA5 2003); *Rivera* v. *Railroad Retirement Bd.*, 262 F. 3d 1005, 1008 (CA9 2001); *Harris* v. *Railroad Retirement Bd.*, 198 F. 3d 139, 141 (CA4 1999); *Abbruzzese* v. *Railroad Retirement Bd.*, 63 F. 3d 972, 974, n. 4 (CA10 1995); *Clifford* v. *Railroad Retirement Bd.*, 3 F. 3d 536, 538, n. 4 (CA1 1993); *Linquist* v. *Bowen*, 813 F. 2d 884, 888 (CA8 1987); *Steebe* v. *Railroad Retirement Bd.*, 708 F. 2d 250, 252 (CA7 1983); *Railroad Concrete Crosstie Corp.* v. *Railroad Retirement Bd.*, 709 F. 2d 1404, 1406, n. 2 (CA11 1983); *Szostak* v. *Railroad Retirement Bd.*, 370 F. 2d 253, 254 (CA2 1966) (interpreting §231g's predecessor provision); accord, Brief for Petitioner 15; Brief for Respondent 12.

[2] "[S]ubsection (c)," *i.e.,* 45 U. S. C. §355(c), governs administrative review of benefits determinations under the RUIA. It addresses decisions awarding or denying benefits, including "initial determination[s]," as well as decisions about the recovery of improperly awarded benefits. 45 U. S. C. §§355(c)(1)–(4).

2006 application must constitute "any final decision of the Board." It does.

## A

The text of §355(f) starts our analysis. The phrase "any final decision" is broad, and it reflects Congress' intent to define the scope of review "expansively." *Smith* v. *Berryhill*, 587 U. S. \_\_\_, \_\_\_ (2019) (slip op., at 6) (internal quotation marks and brackets omitted). The phrase "denotes some kind of terminal event," such as the "final stage of review." *Id.,* at \_\_\_–\_\_\_ (slip op., at 6–7). Similar language in the Administrative Procedure Act has been interpreted to refer to an agency action that "both (1) mark[s] the consummation of the agency's decisionmaking process and (2) is one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.,* at \_\_\_ (slip op., at 9) (quoting *Bennett* v. *Spear*, 520 U. S. 154, 177–178 (1997); internal quotation marks omitted).

The Board's refusal to reopen the prior denial of benefits satisfies these criteria. First, the decision was the "terminal event" in the Board's administrative review process. *Smith*, 587 U. S., at \_\_\_ (slip op., at 6). After first requesting reopening before the Bureau, Salinas exhausted further agency review by appealing to the Board itself. Salinas' only recourse thereafter was to seek judicial review.

Second, the Board's decision was one "'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Army Corps of Engineers* v. *Hawkes Co.*, 578 U. S. 590, 597 (2016). The Board has defined reopening as "a conscious determination . . . to reconsider an otherwise final decision for purposes of revising that decision." 20 CFR §261.1(c). Reopening therefore entails substantive changes that affect benefits and obligations under the RRA. Consistent with its substantive nature, the decision to grant or deny reopening is guided by objective criteria, including whether "there is new and material evidence

or there was adjudicative error not consistent with the evidence of record at the time of adjudication." §261.2(b). If reopening is granted, any revision the Board makes may be reviewed in the same manner as a primary determination of benefits; otherwise, the revision is "binding." §§261.7, 261.8. In light of these features, a decision about reopening fits within the meaning of "any final decision" as that phrase is used in §355(f).

The Board disagrees because it interprets the phrase "any final decision" to mean "any final decision under §355(c)." The Board's argument goes like this: Section 355(f) authorizes four parties to seek judicial review: (1) a claimant for benefits, (2) a claimant's railway labor organization, (3) a claimant's base-year employer, and (4) "any other party aggrieved by a final decision under subsection (c) of this section." 45 U. S. C. §355(f). The phrase "any other" means that, in order to obtain judicial review, each of the enumerated parties must be "aggrieved by a final decision under subsection (c)." This implies, in turn, that each party may seek judicial review of only the decision "under subsection (c)" by which it was aggrieved. A denial of reopening is not a decision "under subsection (c)" because it is not a determination granting or denying benefits. See §§355(c)(1)–(4). Thus, the Board argues, reopening decisions are not subject to judicial review.

The Board's interpretation is inconsistent with the text of §355(f). Congress conspicuously chose the broad language "any final decision," without tying that phrase to the earlier reference to "a final decision under subsection (c)." This omission is especially notable because Congress used such limiting references elsewhere in §355. Under §355(c)(5), Congress established rules for "[f]inal decision[s] of the Board in the cases provided for in the preceding three paragraphs" (in other words, under §§355(c)(2)–(4)). 45 U. S. C. §355(c)(5). In the same paragraph, Congress au-

thorized any properly interested and notified party to obtain judicial review of "any such decision by which he claims to be aggrieved." 45 U. S. C. §355(c)(5). By using the language "such" and "by which he claims to be aggrieved," Congress clearly referred to the particular type of decision described earlier in §355(c)(5), thus limiting judicial review to final decisions "provided for" in §§355(c)(2)–(4).

This type of limiting language is absent from §355(f). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello* v. *United States*, 464 U. S. 16, 23 (1983) (internal quotation marks and brackets omitted). Section 355(f) authorizes judicial review of "any" final decision, not "such" final decision "under subsection (c)." The Board's denial of reopening qualifies for review under the language Congress chose.[3]

B

To the extent there is ambiguity in the meaning of "any final decision," it must be resolved in Salinas' favor under the "strong presumption favoring judicial review of administrative action." *Mach Mining, LLC* v. *EEOC*, 575 U. S. 480, 486 (2015) (internal quotation marks omitted). This default rule is "'well-settled,'" and Congress is presumed to legislate with it in mind. *Kucana* v. *Holder*, 558 U. S. 233, 252 (2010). To rebut the presumption, the Board bears a

---

[3] The Court need not resolve the parties' dispute about whether each type of party listed in §355(f) must be "aggrieved by a final decision under subsection (c)," or whether that phrase modifies only the closest antecedent. Either way, Salinas is a proper party because he qualifies as both a "claimant" and a "claimant . . . aggrieved by a final decision under subsection (c)." Salinas has filed four separate applications for benefits under the RRA, and he claims to have been aggrieved by the Board's decision on each, including the Board's allegedly incorrect assessment of the benefits he is owed based on his 2013 application.

"heavy burden" of showing that the statute's "language or structure" forecloses judicial review. *Mach Mining*, 575 U. S., at 486 (internal quotation marks omitted).

The Board has not met its burden. The Board argues that various cross-references within §355 indicate that §355(f) covers only decisions made under §355(c). For instance, §355(c)(7) provides for review solely "pursuant to this subsection and subsection (f)." 45 U. S. C. §355(c)(7); see also §355(c)(5). Meanwhile, §355(f) requires that "all administrative remedies within the Board," including review under §355(c), must be exhausted before a party can seek judicial review. Finally, §355(g) provides that "[f]indings of fact and conclusions of law of the Board in the determination of any claim for benefits or refund" and "the determination of any other matter pursuant to subsection (c)" shall be reviewed exclusively under §355(f). In the Board's view, these cross-references prove that §§355(f) and 355(c) are coextensive.

The structure of §355 shows that §355(c) feeds exclusively into §355(f), but nothing in the statute suggests that the exclusivity runs the other way. To the contrary, several clues indicate that §355(f) encompasses decisions beyond those described in §355(c). For example, §355(g) lists three types of decisions that are subject to review exclusively under §355(f): determinations of claims for benefits or refunds, determinations of other matters under §355(c), and determinations that unexpended funds in the railroad unemployment insurance account may be used to pay benefits or refunds. See 45 U. S. C. §§355(g), 351(p), 360(a). The Board concedes that the third type of decision falls outside §355(c). See Brief for Respondent 22, n. 4.[4] In addition, the

_____

[4] The Board argues that §355(g) merely precludes review of the Board's fund decisions by the Comptroller General, who ordinarily makes determinations related to the charging and settling of government accounts. See Brief for Respondent 22, n. 4. That purpose, however, could have been accomplished without also indicating that review is available "as provided in subsection (f)." 45 U. S. C. §355(g). Indeed, the RUIA does

Board's own regulations appear to presume that judicial review is available for decisions not covered by §355(c), such as the Board's determinations of employers' contribution rates. See 20 CFR §345.307(c). Given these indications that §355(f) is broader than §355(c), the Board's structural argument does not overcome the plain meaning of "any final decision" and the presumption in favor of judicial review.

C

The Board's remaining arguments also fall short. First, the Board argues that this Court's precedent holds that reopening decisions are not subject to judicial review. In *Califano* v. *Sanders*, 430 U. S. 99 (1977), this Court concluded that §405(g) of the Social Security Act, which authorizes judicial review of "'any final decision of the Secretary made after a hearing,'" does not apply to refusals to reopen a prior benefits determination. *Id.,* at 102 (quoting 42 U. S. C. §405(g)). As it is under the RRA, the opportunity to seek reopening in *Califano* was "a second look that the agency had made available to claimants as a matter of grace" after the deadline for appealing an initial benefits determination had passed. *Smith*, 587 U. S., at ___ (slip op., at 12). Given this similarity, many courts have applied *Califano* to the type of decision at issue here. See, *e.g., Roberts*, 346 F. 3d, at 141; *Harris* v. *Railroad Retirement Bd.*, 198 F. 3d 139, 142 (CA4 1999); *Abbruzzese* v. *Railroad Retirement Bd.*, 63 F. 3d 972, 974 (CA10 1995).

A key textual difference in the respective judicial review provisions, however, distinguishes *Califano* from this case.

_____

exactly this with respect to determinations about the use of funds from an administrative expense account. See §361(c) (providing simply that the Board's determinations "shall not be subject to review in any manner"). Ultimately, we need not resolve whether the Board's fund decisions are subject to judicial review. The point is that the Board's structural interpretation is subject to doubt, and therefore does not overcome the presumption in favor of judicial review.

Section 405(g) of the Social Security Act provides that re-
viewable decisions must be "made after a hearing," whereas
§355(f) of the RRA contains no such limitation. Compare
42 U. S. C. §405(g) with 45 U. S. C. §355(f). Section 405(g)'s
hearing requirement was a significant basis for *Califano*'s
conclusion that judicial review was unavailable, as "a peti-
tion to reopen a prior final decision may be denied without
a hearing." 430 U. S., at 108; see also *ibid.* (explaining that
§405(g) "clearly limits judicial review to a particular type of
agency action"). The other considerations identified in *Cali-
fano*, including the fact that reopening was made available
only by regulation, corroborated the Court's interpretation
of this important textual limit. *Ibid.*; see also *Smith*, 587
U. S., at \_\_\_ (slip op., at 8). Section 355(f), by contrast, con-
tains no such express limitation, and the Board's decision
fits within the provision's plain language.

Second, the Board argues that §355(f) should be inter-
preted in light of §231g's reference to decisions "determin-
ing the rights or liabilities of any person." See 45 U. S. C.
§231g. The denial of reopening does not qualify for judicial
review, the Board claims, because it is simply a "refusal to
make a new determination" of rights or liabilities, like the
decision this Court addressed in *Your Home Visiting Nurse
Services, Inc.* v. *Shalala*, 525 U. S. 449 (1999). *Id.,* at 453
(emphasis deleted). In *Your Home*, this Court concluded
that an agency intermediary's refusal to reopen a prior
Medicare reimbursement determination was not subject to
further administrative review because it was not a "'final
determination . . . as to the amount of total program
reimbursement due.'" *Ibid.* (quoting 42 U. S. C.
§1395*oo*(a)(1)(A)(i)). The agency argued that the denial of
reopening was not itself a determination "as to the
amount," but rather a refusal to make such a determina-
tion. *Ibid.* This Court concluded that the agency's inter-
pretation was reasonable, and thus entitled to deference
under *Chevron U. S. A. Inc.* v. *Natural Resources Defense*

*Council, Inc.*, 467 U. S. 837 (1984). *Your Home*, 525 U. S., at 453. The Court noted that the agency's interpretation was also "the more natural" reading of the statute and was "further confirmed" by two considerations from *Califano*: The right to seek reopening existed only by regulation, and permitting review would undermine the ordinary deadlines for appealing the intermediary's reimbursement decisions. 525 U. S., at 453–454. The Board argues that its decision here should be viewed in the same way.

The Board's argument is unpersuasive for several reasons. First, the statute in *Your Home* defined the scope of internal agency review and thus did not implicate the presumption in favor of judicial review. To the contrary, the Court ultimately deferred to the agency's interpretation precluding review under *Chevron.* See 525 U. S., at 453. No such deference is due here because the scope of judicial review is "hardly the kind of question that the Court presumes that Congress implicitly delegated to an agency." *Smith*, 587 U. S., at ___ (slip op., at 14).

Second, the statute at issue in *Your Home* was narrower than §231g because it focused on a particular type of determination: one "as to the amount of total program reimbursement due the provider."     See 42 U. S. C. §1395*oo*(a)(1)(A)(i). Section 231g, in contrast, broadly authorizes judicial review of "[d]ecisions . . . determining the rights or liabilities of any person under [the RRA]." This broader language, as well as §231g's express direction that "all provisions of law shall apply in the same manner as though the decision were a determination of corresponding rights or liabilities under the [RUIA]," indicates that §231g simply incorporates §355(f) into the RRA. As the Board stated during oral argument, §231g "effectively piggybacks" on §355(f). Tr. of Oral Arg. 46. Every Court of Appeals to interpret these statutes has reached the same conclusion. See *supra,* at 5, n. 1. Thus, the key language governing judicial review under both statutes is the phrase "any final

decision."

Finally, the Board argues that the opportunity to seek reopening is a matter of administrative grace, and such solicitous discretion should not be discouraged by allowing judicial review. But the fact that the Board could decline to offer reopening does not mean that, having chosen to provide it, the Board may avoid the plain text of §355(f). See *Hawkes Co.*, 578 U. S., at 602 ("[S]uch a 'count your blessings' argument is not an adequate rejoinder to the assertion of a right to judicial review"). Whether the availability of judicial review will affect how the Board exercises its discretion is a question properly reserved for Congress.

It is also worth noting that judicial review of reopening decisions will be limited. The Board's decision to grant or deny reopening, while guided by substantive criteria, is ultimately discretionary and therefore subject to reversal only for abuse of discretion. See 20 CFR §261.11; *Stovic*, 826 F. 3d, at 506; *Szostak* v. *Railroad Retirement Bd.*, 370 F. 2d 253, 254 (CA2 1966) (Friendly, J., for the court). Most decisions will be upheld under this deferential standard. See *ICC* v. *Locomotive Engineers*, 482 U. S. 270, 288 (1987) (Stevens, J., concurring). Judicial review plays a modest, but important, role in guarding against decisions that are arbitrary, inconsistent with the standards set by the Board's own regulations, or otherwise contrary to law.

\*    \*    \*

We hold that the Board's refusal to reopen a prior benefits determination is a "final decision" within the meaning of §355(f), and therefore subject to judicial review. The judgment of the United States Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–199
_____

## MANFREDO M. SALINAS, PETITIONER *v.* UNITED STATES RAILROAD RETIREMENT BOARD

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[February 3, 2021]

JUSTICE THOMAS, with whom JUSTICE ALITO, JUSTICE GORSUCH and JUSTICE BARRETT join, dissenting.

The Court may well correctly interpret the judicial review provision located in the Railroad Unemployment Insurance Act (RUIA). See 45 U. S. C. §355(f). But this case concerns the judicial review provision located in the Railroad Retirement Act (RRA). See 45 U. S. C. §231g. And though the RRA references the RUIA to explain *how* to obtain judicial review, it defines separately *what* may be reviewed—the key issue here.

The RRA provides that "[d]ecisions of the Board determining the rights or liabilities of any person under this subchapter shall be subject to judicial review in the same manner, subject to the same limitations, and all provisions of law shall apply in the same manner as though the decision were a determination of corresponding rights or liabilities under the [RUIA]." *Ibid.* This language directs courts to assess questions about reviewability in three steps. First, resolve whether the Board's decision determined rights or liabilities. Second, locate the rights or liabilities under the RUIA, if any, that correspond to the ones determined by the Board. And third, decide whether and how a determination of those parallel rights or liabilities would be reviewed under the RUIA.

The majority bypasses this structure entirely by over-looking the question whether the Board's decision here determined any right or liability at all.  It did not.  A "right" is "[a] power, privilege, or immunity guaranteed under a constitution, statutes or decisional laws, or claimed as a result of long usage."  Black's Law Dictionary 1189 (5th ed. 1979).  Similarly, a "liability" is "an obligation one is bound in law or justice to perform."  *Id.,* at 823.  The Board here did not assess a legal obligation or claim.  As the majority points out, the Board decided only the "ultimately discretionary" matter of whether to reopen the 2006 decision. *Ante,* at 13.  Neither the RRA nor the RUIA provides any statutory right to reopen a proceeding.  And the regulations that create reopening procedures make clear that no one has a right to that proceeding; the Board has plenary authority to "direct that any decision, which is otherwise subject to reopening under this part, shall not be reopened."  20 CFR §261.11 (2020).

Nor did the Board's decision determine any underlying statutory entitlement to benefits, as petitioner contends. The most recent reopening decision did not address the merits of the 2006 decision.  On the contrary, it briefly explained that petitioner failed to meet any of the threshold regulatory requirements to obtain a reopening in the first place.  As we unanimously said in a similar context, the "more natural" understanding of a reopening denial like this one is that it was simply "the *refusal* to make a new determination."  *Your Home Visiting Nurse Services, Inc.* v. *Shalala*, 525 U. S. 449, 453 (1999).

The majority skirts this analysis by noting that the statute at issue in *Your Home* was narrower than the RRA.  In *Your Home*, the statute involved determinations of "program reimbursement" amounts, 42 U. S. C. §1395*oo*(a)(1) (A)(i), whereas the statute here provides review for determinations of "rights or liabilities," 45 U. S. C. §231g.  But that distinction is irrelevant.  The reasoning in *Your Home*

was simply that the refusal to reopen a determination "is not a final determination . . . but rather the *refusal* to make a new determination." 525 U. S., at 453 (internal quotation marks omitted). So too here.[1]

The majority also tries to sidestep text and precedent by invoking the presumption in favor of judicial review of administrative action that this Court sometimes applies. But we have explained that this presumption is nothing more than a default rule that gives way to "a statute's language or structure." *Mach Mining, LLC* v. *EEOC*, 575 U. S. 480, 486 (2015); see also *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 351 (1984) (explaining that the presumption is "overcome. . . whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme" (internal quotation marks omitted)). Here, §231g limits judicial review to Board decisions determining rights or liabilities. The statutory language alone controls the outcome.

Any presumption is further undercut because petitioner had full opportunity to seek judicial review of the 2006 decision that did determine his rights. Congress gave petitioner 90 days to file a petition for review in a court of appeals. §355(f). Petitioner simply did not take advantage of it. To require a court to review a reopening denial now— 15 years after the statutory time for review expired—transforms a default presumption into a tool to "frustrate the statutory purpose of imposing a [time] limit on judicial review." *Your Home*, 525 U. S., at 454. The presumption of judicial review is not a presumption of infinite judicial review. See *Califano* v. *Sanders*, 430 U. S. 99, 108 (1977) (rejecting "an interpretation that would allow a claimant judicial review simply by filing—and being denied—a petition

————————
[1] That the Court noted the best reading of the statute also happened to be a reasonable one under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984), does not undermine its logic.

to reopen his claim"). We should not so readily allow a
court-created presumption to overcome statutory time lim-
its.

The majority opinion is doubly incorrect because it cre-
ates a new form of judicial review in a context where it is
not clear how it can be exercised. What standards a court
could use to review Board decisions denying reopening re-
main elusive. There are no statutory cues to guide review—
indeed, it is not altogether clear that the Board has author-
ity to reopen its final decisions. See 45 U. S. C. §355(g).
And the regulations that provide review give the Board dis-
cretion to deny reopening whenever it "deem[s] proper,"
even if a case "is otherwise subject to reopening. 20 CFR
§261.11. The "impossibility of devising an adequate stand-
ard of review" for these sorts of decisions is yet another rea-
son to conclude that no review is warranted. *ICC* v. *Loco-
motive Engineers*, 482 U. S. 270, 282 (1987); cf. 5 U. S. C.
§701(a)(2) (extending judicial review, "except to the extent
that . . . agency action is committed to agency discretion by
law").[2] Were courts to try to impose standards governing
when the Board can deny reopening, the unintended effect
may be to discourage the Board from offering reopenings in
the first place. I would not distort the RRA's judicial review
provision to force courts to review a decision where no
standards of review are evident.

Instead of reckoning with these serious questions, the
majority interprets §231g to say nothing more than that the
RUIA's judicial review provision applies. *Ante*, at 5. But
that interpretive gloss ignores the words Congress chose.
Only Board decisions "determining the rights or liabilities
of any person" under the RRA are subject to judicial review.

_____

[2] Our precedent suggests that even if judicial review is generally pre-
cluded, it may still remain available for "the adjudication of colorable
constitutional claims." *Califano* v. *Sanders*, 430 U. S. 99, 109 (1977).
But we need not decide whether this exception applies because neither
side contends that the Board decided such an issue below.

45 U. S. C. §231g.  Because the Board's decision below did not determine any right or liability, the RRA does not provide for judicial review.  I respectfully dissent.