In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 22-1347, 22-1709 & 22-1737

DRIFTLESS AREA LAND CONSERVANCY, *et al.*,

*Plaintiffs-Appellees, Cross-Appellants*,

*v.*

RURAL UTILITIES SERVICE, *et al.*,

*Defendants-Appellants, Cross-Appellees*,

*and*

AMERICAN TRANSMISSION COMPANY LLC, ITC MIDWEST LLC, and DAIRYLAND POWER COOPERATIVE,

*Intervening Defendants-Appellants, Cross-Appellees*.

_____

Appeals from the United States District Court
for the Western District of Wisconsin.
Nos. 21-cv-096-wmc & 21-cv-306-wmc — **William M. Conley**, *Judge*.

_____

ARGUED SEPTEMBER 28, 2022 — DECIDED JULY 19, 2023

_____

Before EASTERBROOK, HAMILTON, and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The Cardinal-Hickory Creek Project is a planned electric transmission line that would deliver wind energy from Iowa to Southern Wisconsin. The utility companies responsible for the line asked the Fish and Wildlife Service to allow construction across the Upper Mississippi River National Wildlife and Fish Refuge alongside a road and railroad that already cross the Refuge.

In October 2019 the Rural Utilities Service completed an environmental impact statement assessing this transmission line under the National Environmental Policy Act, 42 U.S.C. §4332(2)(C). The Fish and Wildlife Service and the Army Corps of Engineers adopted the statement for their own use in considering the project. In December 2019 the Fish and Wildlife Service determined that permitting the line to pass through the Refuge would be "compatible" with its "major purposes" under the Refuge Act. 16 U.S.C. §668dd(d)(1)(A). The agency issued a right-of-way permit in September 2020.

Several environmental advocacy groups sued, arguing that the permit violates the Refuge Act and that the environmental impact statement is deficient under the National Environmental Policy Act. While litigation was pending, the utility companies applied for an amended permit slightly altering the route, which still would largely parallel the road. They also asked the Fish and Wildlife Service to consider a land exchange under 16 U.S.C. §668dd(b)(3) as an alternative to the permit. While reviewing these new requests, the agency discovered that it had relied on incorrect easement documents in issuing its original compatibility determination. By a letter dated August 27, 2021, it revoked the determination and permit. This letter also promised to consider the proposed land

exchange. Almost two years have passed, but the agency has not issued a new decision.

Despite the absence of an effective decision, the litigation continued. The district court entered a declaratory judgment that, under the Refuge Act, the agency's compatibility determination could not support a crossing either by right of way (the rescinded decision) or land transfer (the pending proposal). The court also vacated the Rural Utilities Service's decision to adopt the environmental impact statement and remanded to the agency for further proceedings, although it declined to enjoin ongoing construction of the project on private land outside the Refuge. 580 F. Supp. 3d 588 (W.D. Wis. 2022). The agencies and utility companies appealed, and the advocacy groups cross-appealed from the denial of injunctive relief. (There were earlier appeals too, but the issues those decisions resolved do not affect the parties' current disputes. See *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742 (7th Cir. 2020); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508 (7th Cir. 2021).)

We must first ensure that the district court had subject-matter jurisdiction. The utility company defendants maintain that the challenge to the revoked permit is moot.

A claim is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. [This occurs] only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up). But a case does not inevitably become moot when a party chooses to stop the challenged conduct. Cessation implies mootness only when it is "absolutely clear" that the "allegedly wrongful behavior could not reasonably be expected to recur." *Friends*

*of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000).

We presume that an agency acts in good faith when it alters its course of action. *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017). This does not end our inquiry, however. An agency's decision to change course does not moot a lawsuit when the change is "not implemented by statute or regulation and could be changed again." *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998). That is the case here. Although the Fish and Wildlife Service has revoked the original compatibility determination, it has not promised never to issue a new permit for the crossing. Tellingly, the agency itself does not argue that the litigation has become moot.

The district court therefore had jurisdiction to review both the revoked right-of-way permit and the proposed land exchange under the Refuge Act. But jurisdiction alone does not allow a court to reach the merits. Final agency action also is essential to judicial review. See 5 U.S.C. §704 (part of the Administrative Procedure Act or APA).

"[T]wo conditions … generally must be satisfied for agency action to be 'final' under the APA." *Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016). The challenged action must represent the "consummation" of an agency's decisionmaking process and must determine "rights or obligations". *Ibid.* (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). In other words, §704 asks whether a "terminal event" has occurred. *Salinas v. Railroad Retirement Board*, 141 S. Ct. 691, 697 (2021).

In *Hawkes* the Supreme Court found that the Army Corps of Engineers' determination that waters on the plaintiffs'

property were subject to the Clean Water Act was a final agency action. This determination was the end of the agency's decisionmaking process: it was issued "after extensive fact-finding" and was to remain valid for five years. 578 U.S. at 597–98. It was also "definitive": plaintiffs were denied a safe harbor from liability under the Clean Water Act, even though the determination did not itself impose monetary liability. *Id.* at 598–600.

By contrast, the Fish and Wildlife Service's current stance regarding the proposed transmission line does not meet the Court's criteria of finality. The compatibility determination is not a final action. Even before it was rescinded, the determination was just a prerequisite to a permit rather than the end of the agency's process. And although the right-of-way permit may have "consummated" the agency's decisionmaking process while it stood, the agency has revoked it. A revoked permit lacks legal consequence. It neither allows nor forbids the challenged crossing. Matters are back where they were before the permit issued: under consideration at the agency.

Once an agency has made a final decision, a reviewing court evaluates whether that decision is supported by substantial evidence. 5 U.S.C. §706(2)(E). In *Hawkes* the agency's decision was issued after "extensive factfinding", which gave the Court a record to review. That's impossible here: now that the Fish and Wildlife Service has rescinded the compatibility determination and permit, the court lacks an administrative record. To determine whether a permit allowing the transmission line to cross the Refuge would be "compatible" with the Refuge's "major purposes", 16 U.S.C. §668dd(d)(1)(A), a court needs to evaluate the agency's factual findings about compatibility, as well as any findings about the "major purposes" of

this particular Refuge; until the agency has made its record and articulated findings based on that record, a judicial decision is premature.

The potential land transfer likewise is not ready for judicial review. The Fish and Wildlife Service agreed to consider a proposal but has not reached a decision. Agreeing to review a proposal cannot be the "consummation" of the agency's decisionmaking process, as the decision is still to come. Again, the Fish and Wildlife Service has not produced a record of any factfinding in support of a transfer. How can a court review a decision that has not been made based on a record that has not yet been produced?

Sometimes courts review decisions that an agency has reached but has yet to enforce. See *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967); *Hawkes*, 578 U.S. at 597–600. But pre-enforcement review does not imply the propriety of pre-decision review. *San Francisco Herring Association v. Department of the Interior*, 946 F.3d 564 (9th Cir. 2019), does not hold otherwise, despite plaintiffs' protestations—there, too, the agency had made a final decision, though review occurred before it had been enforced.

The Fish and Wildlife Service has not issued a final decision that could harm plaintiffs. The agency has not permitted a land transfer and perhaps never will. Approval of the transmission line would require further proceedings: a new compatibility determination and permit, evaluating the amended permit application, deciding to abandon the permit in favor of a land exchange, or abandoning the crossing.

The district court gave two reasons for declaring unlawful actions that the agency may or may not ever take. First,

relying on its erroneous conclusion that the permit consti-
tuted a final decision even after its revocation, the court held
that a land exchange was "very likely" subject to the same
standard as the permit and so could not replace the construc-
tion permit. 580 F. Supp. 3d at 599. Second, it found that
"hardship to the parties" weighed in favor of review. The
judge expressed concern that delayed review would leave the
project "nearly completed" everywhere except the Refuge,
creating a sunk cost so large that a reviewing court would
have "little choice but to approve" the crossing. *Id*. at 599–600.

Neither of these rationales justifies ignoring §704's finality
requirement. We do not share the district court's certainty that
the statutory requirements for a land exchange and right-of-
way permit are identical. The Refuge Act uses different words
to describe the standard the different potential actions must
meet. An inquiry into whether a land exchange is "suitable"
under 16 U.S.C. §668dd(b)(3) may differ from the compatibil-
ity analysis for a right-of-way permit under 16 U.S.C.
§668ee(1), if only because a land exchange entails an increase
in the Refuge's extent, which must be offset against a loss else-
where. The Fish and Wildlife Service recently opined that
land exchanges do not require compatibility determinations
but that their "conservation benefits" must "outweigh identi-
fiable harm" and "further the Refuge System's mission and
the individual refuge purposes." Department of the Interior,
Office of the Solicitor, M-37078 (May 31, 2023). In other words,
the agency must determine a swap's net effects. But without
knowing what land the agency agrees to acquire and cede, it
is impossible for a reviewing court to evaluate whether the
agency's decision about net benefits is supported by substan-
tial evidence.

In finding that the standards of review for a land exchange and right-of-way permit are identical, the district court relied on a single decision: *Friends of Alaska National Wildlife Refuges v. Bernhardt*, 463 F. Supp. 3d 1011 (D. Alaska 2020). That decision was reversed by a panel of the Ninth Circuit. *Friends of Alaska National Wildlife Refuges v. Haaland*, 29 F.4th 432, 443–44 (9th Cir. 2022). The panel decision was vacated pending en banc review. 54 F.4th 608 (9th Cir. 2022). The agency has since withdrawn from the exchange, the appeal has been dismissed, and the district court's decision has been vacated. 2023 U.S. App. Lexis 14927 (9th Cir. June 15, 2023). We do not express any opinion on the merits of the question other than to say that the Ninth Circuit did what our district court should have done: it terminated the litigation once the agency rescinded its decision.

Any "hardship to the parties" from delayed review cannot override §704's finality requirement. In *Abbott Laboratories* the Court permitted pre-enforcement review where the plaintiffs faced hardship in the form of a choice between complying with the final agency action or incurring civil or criminal penalties. 387 U.S. at 152–53. The agency's actions here have not put plaintiffs to a choice. Whatever hardship they face comes not from the agency's promise to consider a land exchange but from the utility companies' decision to build on their own land. The cost of construction is one the utility companies have opted to incur and bear the risk of, not one imposed by the agency. In the absence of any final agency action under §704, the district court erred in reviewing the merits of the proposed land exchange.

Plaintiffs' request for relief against the Rural Utilities Service under the National Environmental Policy Act likewise is

premature. Dairyland Power Cooperative, a utility company with a nine percent ownership interest in the project, has told the Service that, after the transmission line is complete, it may seek a federal loan that will replace some or all of the line's current private financing. Dairyland has yet to make any proposal to the Service, so financing is even farther from finality than is the land swap.

We grant that the Environmental Impact Statement for the transmission line is "final" in the sense that multiple agencies have adopted it. But an EIS differs from a decision to approve any given action. NEPA requires an agency to include a statement as part of its "recommendation or report" for "major Federal actions significantly affecting the quality of the human environment". 42 U.S.C. §4332(2)(C). It is the decision incorporating the statement into a recommendation or report that is a reviewable agency action. *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016). Yet the Rural Utilities Service has yet to issue a recommendation or report on any proposal, because Dairyland has not made one. When the agency adopted the environmental impact statement, that did not "consummat[e]" its decisionmaking process, *Hawkes*, 578 U.S. at 597, but took just one preliminary step toward an eventual decision. And the agency's conclusion that the statement complies with the National Environmental Policy Act lacks legal consequences—any entitlements will flow from the ultimate funding decision. To which we add that it is not possible to evaluate the environmental consequences of any decision, such as the extension of federal credit, before knowing what that decision would entail.

Environmental impact statements are required only for "major" federal actions "significantly affecting the quality of

the human environment". 42 U.S.C. §4332(2)(C). It is not obvious that funding part of a project that will be completed with or without federal assistance is a major federal action. The transmission line that plaintiffs object to will be in operation before Dairyland even requests funding. If the agency decides that federal loans will replace some private financing, that decision may or may not "significantly" affect the environment.

That leaves only plaintiffs' cross-appeal of the district court's refusal to issue a permanent injunction against construction of the transmission line on non-federal land. The court entered a preliminary injunction barring activities subject to the Army Corps' authorization under the Clean Water Act, 2021 U.S. Dist. LEXIS 210178 (W.D. Wis. Nov. 1, 2021), and plaintiffs argue that it abused its discretion by failing to make that injunction permanent. But the activities plaintiffs seek to enjoin here are not subject to federal authorization; they are privately funded and take place on land outside of federal control. Thus, the preliminary injunction cannot provide a basis to enjoin the entire project.

The district court did not abuse its discretion by declining to enter a permanent injunction. We affirm its denial. In all other respects, we vacate the judgment of the district court and remand for the dismissal of this litigation. The decision that we have vacated will not have any authoritative or precedential effect in any future suit, once any of the federal agencies makes a new decision.