# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-4961

JEREMY BEAUDETTE & MAYA BEAUDETTE, PETITIONERS,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before ALLEN, TOTH, and FALVEY, *Judges.*

**O R D E R**

TOTH, *Judge*, filed the opinion of the Court. FALVEY, *Judge*, filed a dissenting opinion.

In 2010, Congress established the Program of Comprehensive Assistance for Family Caregivers (Caregiver Program), to provide financial assistance to caregivers of seriously injured combat veterans. Caregivers and Veterans Omnibus Health Services Act of 2010, Pub. L. No. 111-163, Title I, 124 Stat. 1130, 1132-40 (codified principally at 38 U.S.C. § 1720G). From the outset, VA has taken the position that Congress meant to insulate determinations under the Caregiver Program from review by the Board and, consequently, the judiciary. The key question presented here is whether a purported reference in section 1720G to VA's longstanding rule that a "medical determination" is not appealable is sufficient to overcome the broad reach of the Veterans' Judicial Review Act and the strong presumptions in favor of reviewability of agency action and against implicit repeals of statutes. We hold that it is not. The Court will therefore grant the petition for a writ of mandamus ordering the Secretary to begin notifying claimants of their right to appeal adverse Caregiver Program determinations to the Board of Veterans' Appeals (Board). We likewise conclude that it is appropriate to certify a class in this litigation.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Petitioner Jeremy Beaudette served in the Marine Corps for 10 years, from 2002 to 2012, completing five combat tours in Iraq and Afghanistan. During these tours, he suffered multiple concussions, which resulted in traumatic brain injury and rendered him legally blind. Upon medical discharge, VA rated him 100% disabled.

By that time, the Caregiver Program had been established, under which a veteran's caregiver may receive certain VA benefits. To qualify, the veteran being cared for must have served in the Armed Forces during specified periods and incurred or aggravated a serious injury, such as traumatic brain injury, psychological trauma, or other mental disorder. 38 U.S.C. § 1720G(a)(2)(A)-(B). The veteran must need personal care services because of an inability to perform at least one or more activities of daily living, a need for supervision or protection because of neurological or other impairment or injury, or a need for regular or extensive instruction or

supervision to avoid serious impairment of daily functioning. 38 U.S.C. § 1720G(a)(2)(C). *See generally* 38 C.F.R. § 71.20 (2020).

A family caregiver of an eligible veteran is entitled to instruction and training to provide personal care services, technical support, counseling, and lodging and subsistence; the *primary* family caregiver is entitled to the previous benefits, as well as appropriate mental health services, respite care, medical care, and a monthly stipend. 38 U.S.C. § 1720G(a)(3). *See generally* 38 C.F.R. §§ 71.40, 71.50 (2020). The continued eligibility of both the veteran and the caregiver is determined by periodic reassessments, and failure to participate in a reassessment will result in revocation of Caregiver Program benefits. 38 C.F.R. § 71.30 (2020). Several additional bases for revoking benefits or discharging the family caregiver are provided at 38 C.F.R. § 71.45 (2020).

In March 2013, Mr. Beaudette and his wife, petitioner Maya Beaudette, applied for benefits under the Caregiver Program. VA found them eligible, and Mrs. Beaudette quit her job to care for her husband full time. VA initiated a reassessment of Mr. Beaudette in October 2017. However, he did not participate in the in-person examination because he was recovering at the time from two major surgeries. VA denied the veteran's request to delay the examination and proceeded with reassessment using his medical records. In February 2018, VA informed petitioners that they were no longer eligible for the Caregiver Program based on its reassessment.

Petitioners challenged the ruling through the Veterans Health Administration (VHA) appeals process. *See generally* VHA DIRECTIVE 1041, Appendix G (Sept. 28, 2020) (summarizing the administrative appeals process). The Caregiver Program manager at their VA medical center initially denied the appeal in July 2018. Next, petitioners sought review from the Director of the Sierra Pacific Veterans Integrated Service Network (VISN), but the appeal was denied, citing Mr. Beaudette's inability to attend an in-person examination.[1]

In August 2019, the Beaudettes sought to appeal to the Board but to date have received no response. Petitioners assert that, had the Board responded, it would have disclaimed any jurisdiction to hear their appeal. The Secretary doesn't dispute this. VA has concluded that benefits decisions under the Caregiver Program may not be appealed to the Board. *See* Caregivers Program, 80 Fed. Reg. 1357, 1366 (Jan. 9, 2015). Petitioners maintain that VA has revoked the benefits of nearly 20,000 recipients since the Caregiver Program began and that VA has withheld judicial review for all benefits decisions under the Caregiver program. Petition at 2-3.

In July 2020, the Beaudettes filed a petition with this Court for extraordinary relief in the form of a writ of mandamus. They seek an order permitting them to appeal to the Board and, if necessary, this Court. Petitioners also move the Court to certify a class of claimants who received an adverse decision under the Caregiver Program, exhausted available review under the VHA, and have not been afforded the right to appeal to the Board. There are two main issues in this case: first, whether VA has incorrectly limited the reviewability of Caregiver Program determinations,

---

[1] There are 18 regional VISNs, which manage the day-to-day functions and provide administrative and clinical oversight of VA medical centers within their purview. U.S. GOV'T ACCOUNTABILITY OFF., GAO-19-462, VETERANS HEALTH ADMINISTRATION: REGIONAL NETWORKS NEED IMPROVED OVERSIGHT AND CLEARLY DEFINED ROLES AND RESPONSIBILITIES 2, 5 (2019).

such that a writ of mandamus is proper; and second, whether petitioners have met the prerequisites for class certification.

## II. ANALYSIS

### A. Jurisdiction

The jurisdictional question starts our analysis. Petitioners assert that VA has curtailed the jurisdiction of this Court by wrongfully excluding the Caregiver Program from appellate review. The Court has the power to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, in aid of its prospective jurisdiction under 38 U.S.C. § 7252. *See Monk v. Wilkie*, 30 Vet.App. 167, 170 (2018) (en banc). Three conditions must be satisfied before a writ of mandamus can issue: "(1) the petitioner must lack an adequate alternative means to attain relief; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the court must be convinced, given the circumstances, that the issuance of the writ is warranted." *Hargrove v. Shinseki*, 629 F.3d 1377, 1378 (Fed. Cir. 2011).

The jurisdiction of this Court is governed by the Veterans' Judicial Review Act (VJRA) (codified in various sections of 38 U.S.C.). Enacted by Congress in 1988, the VJRA created a comprehensive judicial review process for veterans benefits decisions. Under 38 U.S.C. § 511(a), "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits." Matters decided under section 511(a) are "subject to one review on appeal by the Secretary" and "[f]inal decisions on such appeals shall be made by the Board." 38 U.S.C. § 7104(a). Thereafter, a veteran may appeal an adverse decision to this Court, which has "exclusive jurisdiction" over Board decisions. 38 U.S.C. § 7252(a). Petitioners assert, and the Secretary concedes, that benefits provided under the Caregiver Program are "benefits" within the scope of the VJRA. *See* Response at 3. Thus, they fall within the VJRA's general ambit.

Nevertheless, VA has taken the position that the Caregiver Program is excluded from the VJRA's Board-review mandate. In 2015, VA officially announced that Caregiver Program benefits "may not be adjudicated in the standard manner as claims associated with veterans' benefits." 80 Fed. Reg. at 1366. VA based this conclusion on an ancillary provision in the "Construction" portion of the enabling statute, section 1720G(c)(1), which states: "A decision by the Secretary under this section affecting the furnishing of assistance or support shall be considered a medical determination." VA read the phrase "medical determination" as a direct reference to a VA rule, codified at 38 C.F.R. § 20.104(b). The rule initially recognizes that "[t]he Board's appellate jurisdiction extends to questions of eligibility for hospitalization, outpatient treatment, and nursing home and domiciliary care; for devices such as prostheses, canes, wheelchairs, back braces, orthopedic shoes, and similar appliances; and for other benefits administered by the [VHA]." 38 C.F.R. § 20.104(b) (2020). However, the rule adds that "[m]edical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an individual are not adjudicative matters and are beyond the Board's jurisdiction." *Id.* Accordingly, VA reasoned that *all* decisions under the Caregiver Program are "medical determinations as a matter of law," and thus, are exempt from VA's standard appeals process. 80

Fed. Reg. at 1366. VA further emphasized that even non-medical determinations, such as decisions regarding eligibility, are exempt from appellate review. *Id.*

The Beaudettes contend that VA's interpretation is unfounded.[2] They argue that it necessarily conflicts with the ordinary operation of the VJRA and that a purported reference in section 1720G(c)(1) to the VA regulatory carveout for medical determinations is insufficient to abrogate the VJRA's Board-review mandate. *See* Petition at 1.

Our analysis begins with the words of Congress. *Harbison v. Bell*, 556 U.S. 180, 198 (2009) (Thomas, J., concurring) ("Congress' intent is found in the words it has chosen to use."). We must first ask whether the language of the Caregiver Program statute clearly strips the Board of jurisdiction. If the court "ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984).

The Secretary argues that Congress has spoken unambiguously here. Section 1720G(c)(1) explicitly construes Caregiver Program benefits decisions as medical determinations, and under section 20.104(b), "medical determinations" are beyond the Board's jurisdiction. Thus, the Secretary argues, it is clear Congress intended to withhold Board review for Caregiver Program benefits.

We disagree. The plain language of section 1720G(c)(1) does not insulate the Caregiver Program from judicial review. Indeed, the provision does not mention jurisdiction at all. Congress certainly knew how to clearly limit the jurisdiction of this Court when it passed the Caregiver Program statute. *See, e.g.*, 38 U.S.C. §§ 511(a); 7252(a)-(b); 7263(d). In fact, Congress did so recently in a related context. In legislation establishing the Veterans Community Care Program—which incidentally amended portions of section 1720G—Congress instructed that "[t]he review of any decision under subsection (d) or (e) shall be subject to the Department's clinical appeals process, and such decisions may not be appealed to the Board of Veterans' Appeals." John S. McCain III, Daniel K. Akaka, and Samuel R. Johnson VA Maintaining Internal Systems and Strengthening Integrated Outside Networks Act of 2018, Pub. L. No. 115-182, § 101(a)(1), 132 Stat. 1393, 1399 (codified at 38 U.S.C. § 1703(f)) (VA Mission Act of 2018). The contrast between the language of section 1703(f) and section 1720G(c)(1) could hardly be starker, and thus, we reject the Secretary's argument that section 1720G(c)(1) unambiguously strips the Board, and consequently this Court, of jurisdiction.

Having determined that the plain language does not necessitate the Secretary's interpretation of section 1720G(c)(1), two canons of construction weigh heavily against the Secretary in this case. First, there is a "strong presumption favoring judicial review of administrative action." *Salinas v. U.S. R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021). To overcome the presumption, a statute "must upon its face give clear and convincing evidence of an intent to withhold" judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 n.2 (1967). The party

---

[2] Four amicus briefs were filed in this case. The Court would like to thank the amici curiae for adding value to our evaluation of the issues presented herein.

seeking to rebut the presumption "bears a heavy burden of showing that the statute's language or structure forecloses judicial review." *Salinas*, 141 S. Ct. at 698 (quotation marks omitted).

Here, the Secretary has not met his burden. The Secretary argues that Congress intended to withhold judicial review from the Caregiver Program because section 1720G(c)(1) implicitly references VA's regulatory carveout for medical determinations. However, the Secretary's assertion is conclusory. Section 1720G(c)(1) makes no mention of the regulatory carveout "upon its face." *Abbott Labs*, 387 U.S. at 140 n.2. An implied reference cannot constitute "clear and convincing evidence of an intent to withhold" judicial review. *Id.*

Second, there is a "strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (cleaned up). "When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both." *Id.* (quotation marks omitted). The party claiming that "one [law] displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow. The intention must be clear and manifest." *Id.* (quotation marks omitted).

Again, the Secretary offers insufficient proof. He fails to demonstrate a clear congressional intention to displace the ordinary scope of the VJRA. Congress did not mention the VJRA in the Caregiver Program statute, nor did it define the phrase "medical determination" or indicate elsewhere what the term might mean. Ultimately, the Secretary's interpretation is one of possibility, not probability. There is no other instance we can find where Congress has, without a word of comment, wholly excluded a veterans program from judicial review. Such supposition by the Agency falls short of the "clear and manifest" intention required by *Epic*, 138 S. Ct. at 1624. It is well settled that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns., Inc.*, 531 U.S. 457, 468 (2001).

Resisting this reasoning, the Secretary points to two other interpretive canons to support his position. First, Congress is presumed to know of existing laws and regulations when it enacts new legislation. *Cal. Indus. Prods., Inc. v. United States*, 436 F.3d 1341, 1354 (Fed. Cir. 2006). The Court can presume Congress understood the nonreviewable nature of medical determinations when it passed the Caregiver Program statute. Thus, the Secretary argues, it is reasonable to assume Congress intended the phrase "medical determination" to limit Board review.

However, this presumption cuts both ways. Congress is also presumed to know that the VJRA, passed in 1988, grants Board review of all decisions "affect[ing] the provision of benefits by the Secretary." 38 U.S.C. § 7104(a). As noted above, the Secretary readily concedes that Caregiver Program benefits are "benefits" within the scope of the VJRA. Congress also "knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge." *City of Arlington, v. FCC*, 569 U.S. 290, 296 (2013). Therefore, we can presume that if Congress desired to curtail Board review under the VJRA, Congress would have done so in plain terms and not by obliquely referencing a discrete agency regulation.

The Secretary argues that Congress silently ratified VA's construction of section 1720G(c)(1). Congress is presumed to assent to an agency's longstanding statutory construction when it reenacts a statute that fails to undo that interpretation. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978). Congress amended the Caregiver Program by passing the VA Mission Act of 2018, Pub. L. No. 115-182. The amendment did not alter the language of section 1720G(c)(1) or disavow VA's construction of it and thus the Secretary argues that Congress silently ratified VA's interpretation.

However, courts have construed the presumption of acquiescence narrowly where Congress "has made only isolated amendments" to a statute. *Alexander v. Sandoval*, 532 U.S. 275, 292-93 (2001). "The canon of ratification [and the presumption under *Lorillard* have] little probative value where . . . what is re-enacted is a different subsection of the statute." *Shalom Pentecostal Church v. Acting Sec'y U.S. DHS*, 783 F.3d 156, 167 (3d Cir. 2015). Here, Congress did not reenact, amend, or comment on section 1720G(c)(1).

The presumption of acquiescence also lacks teeth absent widespread congressional awareness of the interpretation at issue. *See Schism v. United States*, 316 F.3d 1259, 1294 (Fed. Cir. 2002) (en banc). "Extensive hearings, repeated efforts at legislative correction, and public controversy may be indicia of Congress's attention to the subject." *Butterbaugh v. DOJ*, 336 F.3d 1332, 1342 (Fed. Cir. 2003). Here, the record does not indicate that Congress had widespread awareness of VA's Board-review prohibition. The Secretary cites a single written statement submitted to the House Subcommittee on Health in 2011, which notified the Subcommittee that Caregiver Program benefits decisions may not be appealed to the Board. *See* Response at 6-7. However, the parties debate this. Petitioners contend that members of the Subcommittee may have read the statement to allow Board review *after* initial review by the VHA appeals process. *See* Petitioner's Reply at 10. Petitioners point out that VA did not officially articulate its interpretation of section 1720G(c)(1), at 80 Fed. Reg. at 1366, until approximately four years later. But even if the written testimony clearly foreclosed Board review, as the Secretary contends, it was submitted to the Subcommittee six years before Congress passed the VA Mission Act that made isolated amendments to section 1720G (but not to (c)(1)). Moreover, the statement did not enter the broader legislative history of the VA Mission Act. Thus, we find the single written statement is insufficient to invoke a presumption of "general congressional awareness." *See Schism*, 316 F.3d at 1294.

Of course, the previous analysis, in rejecting the Secretary's interpretation, does not tell us what section 1720G(c)(1) actually means. The Beaudettes argue that Congress may have intended the "medical determination" provision to refer to a procedural safeguard first articulated in *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991), which holds that "[t]he Board cannot make a medical determination based on its own opinion." *Johnson v. Derwinski*, 3 Vet.App. 16, 18 (1991); *see also Kahana v. Shinseki*, 24 Vet.App. 428, 435 (2011) ("[W]hen a Board inference results in a 'medical determination' the basis for that inference must be independent and it must be cited.") However, the Secretary demurs, noting that *Colvin* itself never uses the phrase "medical determination."

With that said, we do not have to settle on a definitive reading of section 1720G(c)(1) for purposes of this appeal. For now, it is sufficient to say that Congress mandated judicial review of benefits decisions within the scope of the VJRA and has not clearly acted, as the law requires, to abrogate that express intent. Of the potentially correct readings of section 1720G(c)(1), the

Secretary's is not one. It would take the extraordinary step of limiting the regular operation of the VJRA and foreclosing judicial review despite the absence of a clearly expressed congressional intent to do so. We can say with confidence that VA's interpretation does not meet the high standard for wholly stripping the Board, and thus this Court, of jurisdiction over Caregiver Program determinations.

We conclude that Congress has spoken unambiguously in mandating Board review of all decisions "under a law that affects the provision of benefits by the Secretary." 38 U.S.C. § 7104(a). VA's interpretation of section 1720G(c)(1) is invalid to the extent it limits the ordinary scope and operation of the VJRA. The Beaudettes have established an indisputable right to Board review, the lack of an adequate administrative means of securing that right, and the propriety of extraordinary relief in these circumstances. Accordingly, a writ of mandamus shall issue.

## B. Class Action

Having determined that VA wrongfully denied claimants the right to seek Board review of Caregiver Program determinations, the Court must determine the appropriate relief. Petitioners ask us to certify a class of individuals who (1) received an adverse decision under the Caregiver Program, (2) exhausted available review under the VHA, and (3) have not been afforded the right to appeal to the Board. Class Motion at 1. Notably, while petitioners sought appeal to the Board (and to date have received no response), they ask us to certify a class of people who have not sought Board review. In this respect, the Court discerns no failure to exhaust administrative remedies because any attempt by the proposed class members to obtain Board review "would amount to a useless act" and be "futile." *Wolfe v. Wilkie*, 32 Vet.App. 1, 39 (2019). The Secretary has stated that Caregiver Program benefits decisions are not reviewable by the Board, *see* 80 Fed. Reg. at 1366, and of course, the Board cannot disobey the Secretary's instructions. § 7104(c).

The Court has set forth the prerequisites for seeking class certification in Rule 23 of our Rules of Practice and Procedure.[3] These are first, that the class is so numerous that consolidating individual actions in the Court is impracticable; second, that there are questions of law or fact common to the class; third, that the legal issue or issues being raised by the representative parties on the merits are typical of the legal issues that could be raised by the class; fourth, that the representative parties will fairly and adequately protect the interests of the class; and, fifth, that the Secretary or one (or more) official, agent, or employee of the Department of Veterans Affairs has acted or failed to act on grounds that apply generally to the class, so that final injunctive or other relief is appropriate respecting the class as a whole. U.S. VET. APP. R. 23(a). Further, the Court considers whether class-wide relief is "superior" insofar as it better serves the interests of justice than a precedential decision. U.S. VET. APP. R. 22(a)(3).

The Secretary does not dispute that the numerosity, commonality, and adequacy of representation factors are met in this case. Nor does the Secretary dispute that this action alleges that the Secretary has acted or failed to act on grounds that apply generally to the proposed class. After reviewing the record and the parties' briefs, we conclude that these four factors are satisfied.

---

[3] The Court promulgated Rule 23 and its companion, Rule 22, shortly after the Beaudette's filed their motion for class certification. In re: Rules of Practice and Procedure, U.S. VET. APP. MISC. ORDER 12-20 (Nov. 10, 2020). Nevertheless, their motion and the Secretary's response fully address the requirements set forth in Rule 23(a).

First, the proposed class is likely to be far larger than 40 members. *See Skaar v. Wilkie,* 32 Vet.App. 156, 191 (2019) (en banc) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members."). Second, whether the Secretary's Board-review prohibition is contrary to 38 U.S.C. §§ 7104(a) and 511(a) is a legal question that is common to all members of the proposed class because it is "capable of class-wide resolution" and its resolution is "central to the validity of each one of the claims." *Id.* at 192. Third, the representative parties will adequately protect the interests of the proposed class because petitioners have an interest in vigorously pursuing the position that Caregiver Program claimants are entitled to Board review and petitioners have no antagonistic interests to other class members. *See Wolfe*, 32 Vet.App. at 30. Fourth, the relief that the petitioners request in this case—an injunction requiring the Secretary to permit Board review of Caregiver benefits decisions—"affect[s] the entire class at once" and thus, is the exact kind of relief contemplated by Rule 23(a)(5). *See Godsey v. Wilkie*, 31 Vet.App. 207, 223 (2019).

The Secretary does, however, contest the typicality factor. He points out that Rule 23(a)(3) contains the phrase "on the merits" and that this modifier is not present in the class certification standard of the Federal Rules of Civil Procedure, which the Court applied before it adopted its own class action rules. *See* FED. R. CIV. P. 23. The Secretary argues that the phrase "on the merits" should be interpreted as requiring typicality with respect to the underlying benefits claims. The factor is not met, he argues, because petitioners do not allege agency error in common when VA decided the merits of their initial claims.

We disagree. Almost all cases before this Court center on legal challenges that are, in some sense, collateral to an underlying claim for benefits. This is the nature of appellate law. Yet, the Secretary's interpretation of Rule 23 would all but preclude class certification whenever agency error happens to go beyond an initial benefits decision. To the contrary, we conclude that the typicality factor applies to the merits of *this petition*. For purposes of Rule 23, an issue is raised "on the merits" when it is the focus of the parties' briefs and is addressed by the Court in its final decision. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "on the merits" as of a judgment "delivered after the court has heard and evaluated the evidence and the parties' substantive arguments"); *see also* FED. R. APP. P. 31(a)(2) (explaining that U.S. circuit courts decide cases "on the merits" after the parties file briefs); SUP. CT. R. 24 (referring to principal briefs submitted to the Supreme Court as "briefs on the merits"). Here, the main substantive issue raised by Petitioners on appeal, disputed by the parties in their briefs, and decided by the Court in its final decision, is whether Board review is available for the Caregiver Program. Accordingly, that issue is typical of all past claimants who were not permitted Board review.

Next, the Court considers whether class certification is superior to a precedential decision. U.S. VET. APP. R. 22(a)(3). Factors to consider, include but are not limited to whether: (i) "the challenge is collateral to a claim for benefits; (ii) litigation of the challenge involves compiling a complex factual record; (iii) the appellate record is sufficiently developed to permit judicial review of the challenged conduct; and (iv) the putative class has alleged sufficient facts suggesting a need for remedial enforcement." *Skaar*, 32 Vet.App. at 191. "No one of these factors is more or less important than the others, rather the Court must engage in a case-by-case balancing to determine whether class certification is appropriate." *Id.*

As for the second factor, this case presents a question of statutory interpretation and so a complex factual record is of limited use here. Petitioners point out that the record includes the legislative and regulatory history of the Caregiver Program and exhibits documenting VA's history of arbitrarily revoking Caregiver benefits, but this evidence, while appreciated, did not factor decisively into our analysis.

Nevertheless, the remaining factors support class certification. Petitioners' challenge is collateral to a claim for benefits. Petitioners only seek the *right* to appeal their case to the Board. Further, the record is sufficiently complete for adjudication. Petitioners have included an appendix of relevant documents that adequately addresses the legal and factual issues presented here. Finally, regarding the fourth factor, we find that there are unique circumstances in this case warranting class-wide relief "through an orderly and consistent process amenable to judicial supervision." *Id.* at 199. It is essential that Caregiver Program claims be resolved as efficiently as possible, considering that members of the proposed class have necessarily suffered a "serious injury… in the line of duty." § 1720G(a)(2)(B).

Most importantly, we conclude that a precedential decision would not effectively inform past program claimants of their appellate rights or ensure that VA honored them. Without centralized relief, individual program participants, who long ago exhausted the VHA appeals process and were prevented from seeking Board review, would be left to discover this opinion through extraordinary diligence or by chance. Indeed, were the Court to deny class certification, the Secretary notably—and with admirable candor—admitted he cannot guarantee VA will find *and* inform each past claimant of the right to appeal previous benefits decisions to the Board. Oral Argument at 49:12. The situation here fundamentally differs from *Skaar*. There, past claimants failed to exercise their appellate rights to appeal to this Court. 32 Vet.App. at 187-89. Whereas here, VA affirmatively prevented Caregiver Program claimants from exercising their appellate rights at all. VA erred in setting up this adjudicative blockade, and it bears some responsibility in advising claimants that it has been lifted. A precedential decision cannot guarantee that sort of remedial action, since it would bind VA only in pending or future claims. *Id.* at 198. Thus, the Court concludes that the Beaudettes have established by a preponderance of the evidence that class action is a superior method of resolving this controversy, thereby overcoming the presumption that a precedential decision is adequate.

Thus, we find that class-wide relief is the superior remedy. Petitioners have satisfied each of the prerequisites for class certification under Rule 22 and 23 and so we certify the class.

Additionally, the Court must appoint class counsel, unless a statute provides otherwise. U.S. VET. APP. R. 23(f)(1). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.* Here, counsel for petitioners—Andy LeGolvan of Paul Hastings LLP, and Amanda Pertusati of Public Counsel—have the motivation, experience, knowledge, and resources necessary to adequately represent the interests of the proposed class. Accordingly, the Court appoints Mr. LeGolvan and Ms. Pertusati as class counsel.

Last, the Court must determine whether class notice is appropriate under the circumstances. *See* U.S. VET. APP. R. 23(c)(2) (emphasizing that the Court has the discretion to decide whether to direct notice to the class). Notice is appropriate to correct an incorrect statement of law. *See Wolfe v. Wilkie*, 32 Vet.App. 1, 40-41 (2019). Here, petitioners point out that VA has had a widespread practice of informing veterans, by mail, that Caregiver Program benefits decisions may not be appealed to the Board. Thus, we conclude that the Secretary should send members of the proposed class an updated benefits decision notice that, under 38 U.S.C. § 5104(a), "shall include an explanation of the procedure for obtaining review of the decision."

### III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the Beaudette Class is certified as defined here: "All claimants who received an adverse benefits decision under the Caregiver Program, exhausted the administrative review process within the VHA, and have not been afforded the right to appeal to the Board of Veterans' Appeals." It is further

ORDERED that Andy LeGolvan, Esq., of Paul Hastings LLP, and Amanda Pertusati, Esq., of Public Counsel, are appointed as class counsel. It is further

ORDERED that the Secretary allow Board review of petitioners' claim. It is further

ORDERED the Secretary is enjoined from denying Board review of future benefits decisions under the Caregiver Program. It is further

ORDERED that within 45 days of the date of this order the parties jointly prepare and submit to the Court for approval a plan to provide notice to members of the proposed class of (1) their right to appeal Caregiver benefits decisions to the Board and (2) the procedure for obtaining Board review of the decision.

DATED: April 19, 2021

FALVEY, *Judge*, dissenting: I respectfully dissent. I would deny the petition for writ of mandamus, and the motion for class action, because Congress has excluded Caregiver Program decisions from Board jurisdiction, and consequently from our jurisdiction. The petition thus is not in aid of our prospective jurisdiction.

In 38 U.S.C. § 1720G(c)(1), Congress states that "[a] decision by the Secretary under [the Caregiver Program] affecting the furnishing of assistance or support shall be considered a medical determination." 38 U.S.C. § 1720G(c)(1). The Secretary persuasively argues that the term "medical determination" in subsection (c)(1) refers to the longstanding regulatory rule that medical determinations are not appealable to the Board. *See* 38 C.F.R. § 20.104(b) (2020) (stating that "medical determinations" are "beyond the Board's jurisdiction"); 38 C.F.R. § 19.3(b) (1983) (same). That rule was the law when Congress enacted section 1720G in 2010, and when it amended the statute in 2018.

We presume that Congress has legislated against the background of existing law and is aware of the meaning and effect of its words. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 698-99 (1979); *Gazelle v. Shulkin*, 868 F.3d 1006, 1011 (Fed. Cir. 2017). And, here, Congress knew the meaning of the term "medical determinations" because, shortly after creating the Caregiver Program, the Secretary told Congress that "all decisions regarding eligibility for, and the provision of benefits under, the Caregiver Program will be considered medical determinations "not within the Board's jurisdiction [and] as a result, such clinical decisions may not be appealed to the Board of Veterans' Appeals." Implementation of Caregiver Assistance: Moving Forward: Hearing before the Subcommittee on Health of the U.S. House of Representatives Committee on Veterans' Affairs, Serial No. 112-23 (July 2011), page 75. Yet, armed with this knowledge, Congress took no action to amend or clarify the statute.

"It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883).

Neither the petitioners nor the majority presents a construction of section 1720G that interprets subsection (c)(1) in a way that makes sense with the rest of the statute. The petitioners' interpretation of section 1720G either disregards the language of subsection (c)(1) or assumes that Congress did not know the regulatory meaning of "medical determination" when enacting section 1720G. *See* 38 U.S.C. § 1720G(a)(2); 38 C.F.R. § 20.104(b).

The Secretary's construction of section 1720G is the only interpretation that gives effect to all the statute's provisions and presumes that Congress understands the implications of its words. I therefore would find, consistent with the Secretary's arguments, that Caregiver Program decisions are outside the Board's jurisdiction and thus outside ours.

In short, although Congress mandated Board review of all decisions "under a law that affects the provision of benefits by the Secretary," 38 U.S.C. § 7104(a), Congress also stripped the Board, and consequently this Court, of jurisdiction over Caregiver Program decisions. 38 U.S.C. § 1720G(c)(1). For this reason, I would deny the petition for writ of mandamus as not in aid of our prospective jurisdiction. For the same reason, I would deny the motion for class action for lack of jurisdiction.

I also would not grant the motion for class certification because, given that any determination that a regulation is invalid would be binding on VA, petitioners must explain why a precedential decision would not be adequate here to overcome the presumption against certifying a class. *See Skaar v. Wilkie*, 32 Vet.App. 156, 196 (2019) (en banc order); U.S. VET. APP. R. 22(a)(3). Overcoming that presumption requires a "showing by a preponderance of the evidence that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Skaar*, 32 Vet.App. at 196 (quoting FED. R. CIV. P. 23(b)(3)); *see* U.S. VET. APP. R. 22(a)(3) (requiring parties to "explain the reasons why a decision granting relief on a class action basis would serve the interests of justice to a greater degree than would a precedential decision granting relief on a non-class action basis").

In *Skaar*, the Court enumerated four nonexhaustive factors for the Court to consider on a case-by-case basis when determining whether the presumption has been rebutted:

[W]hether (i) the challenge is collateral to a claim for benefits; (ii) litigation of the challenge involves compiling a complex factual record; (iii) the appellate record is sufficiently developed to permit judicial review of the challenged conduct; and (iv) the putative class has alleged sufficient facts suggesting a need for remedial enforcement.

32 Vet.App. at 197.

Although no factor holds more weight than another, the Court will, "as appropriate," "engage in a case-by-case balancing" to determine whether "a claimant has rebutted the presumption against aggregate action." *Id*.

Here, I would find that the petitioners have failed their burden of proving the superiority of a class action. Even if petitioners meet the first three enumerated factors, the fourth factor weighs heavily against aggregate action. The majority holds that the fourth—enforcement—favors certifying a class here because the "unique circumstances in this case" warrant class-wide relief "considering that members of the proposed class have necessarily suffered a 'serious injury . . . in the line of duty.'" *Ante* at 9. To the majority, it seems that what matters is that veterans had to suffer a serious injury in service and, if so, that means class certification. Yet all claimants in this system must have suffered an injury or disease as result of their service. Apparently, under the majority's rationale, it is only those that apply for benefits under a statute that says "serious" as worthy of a class. Or perhaps it is that the serious injury was incurred in service. Yet recently the Court considered a proposed class that included veterans with serious *in service* mental health problems and the Court found this did not warrant class treatment. *See Bowling v. McDonough*, __ Vet.App. __, No. 18-5263, 2021 WL 1249822 (Mar. 29, 2021) ("*Bowling/Appling*"). Exactly what "unique circumstances" justify class treatment here escapes me.

As another rationale for determining that class certification is appropriate here, the majority looks to whether a precedential decision would effectively inform past program claimants of their appellate rights. The majority notes that, if we were to deny class certification, the Secretary could not guarantee VA could "find and inform each past claimant of the right to appeal previous benefits decisions to the Board." *Id*. Yet, if VA cannot find them, certifying a class that includes them is of no consequence and does not justify certifying a class—no court order can render possible the impossible.

Finally, the certified class here includes past claimants who, unlike the petitioners, have not appealed to the Board. *Ante* at 10 (certifying a class of claimants "who received an adverse benefits decision under the Caregiver Program, exhausted the administrative review process within the VHA, and have not been afforded the right to appeal to the Board"). In *Skaar*, we held that notions of finality barred "past" or "expired" claimants, with unappealed and final Board decisions. 32 Vet.App. at 187-89; *see also Bowling/Appling*, 2021 WL 1249822 at *5-*6. I would not include past claimants in the proposed class here. Nor would I use them to help rebut the presumption that a precedential decision provides adequate relief. *See Bowling/Appling*, 2021 WL 1249822 at *5.

The majority distinguishes *Skaar* arguing that there past claimants failed to exercise their appellate rights, but that here past claimants faced VA's "adjudicative blockade." *Ante* at 9. And, because a precedential decision can "bind VA only in pending or future claims," the majority concludes that a class action is a superior method for resolving the controversy. *Id*. Yet, a precedential decision invalidating a regulation almost always binds VA in only pending and future claims—it does not reach past claims (or expired claims)—this is the very heart of finality. Under the majority's rationale, class actions become the default whenever we strike down a regulation because only then can past claimants benefit from the remedy provided.

In short, the past program claimant class members here, like the past or expired claimants in *Skaar*, fall outside our jurisdiction. And so, it is not in aid of our jurisdiction to issue a writ for them. In doing so, we are creating jurisdiction, not securing it.

The bottom line is that our jurisprudence on class certification, and in particular whether a class is superior to a precedential decision, is at risk of becoming incoherent and "the equivalent of 'because I say so.'" *Hood v. Brown*, 4 Vet.App. 301, 303 (1993), *vacated in part,* 7 Vet.App. 553 (1995). Thus, I respectfully dissent.